**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION
CIV.NO. 0:15-CV-03322-MBS-KDW**

| | |
|---|---|
| TRYNIE ELLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| HARRELSON NISSAN OF SOUTH CAROLINA, LLC, LOUIS F. HARRELSON AND ROBERT HARRELSON, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO FILE FIRST AMENDED COMPLAINT,**

**I. INTRODUCTION**

Plaintiff has moved pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure for leave to file and serve a First Amended Complaint.

Although Defendants state that Plaintiff's motion to amend should be denied in its entirety (D's Opp. p. 1, 26), Defendants do not raise any arguments against or state any opposition to amendment of the complaint as to the fourth existing cause of action, arising under Title VII, insofar as it alleges a claim for sexual harassment. Moreover, Defendants provide no basis for objecting to amendment of the complaint to add two causes of action for slander and tortuous interference with contract, based on recent events involving the plaintiff and Defendant Robert Harrelson. Therefore, for the reasons set forth in Plaintiff's opening brief in support of the motion to amend, these unchallenged amendments to the complaint should be allowed.

1

## II. ARGUMENT

**A. Defendant's Only Challenge to the Motion to Amend is Their Contention that the Amendments would Be Futile**

Under Federal Rule of Civil Procedure 15(a) once a motion to amend a complaint is filed, leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a)(2). The Supreme Court has declared that motions to amend complaints should be granted "[i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Wade Electronics Serv., Inc. v. First Commercial Bank,* 819 F.2d 496, 497 (4th Cir.1987) (noting that the Supreme Court "mandates a liberal reading of the rule's direction for 'free' allowance").

Defendants' only opposition to the Plaintiff's motion to amend is their contention that some (but not all) of the proposed amendments and causes of action are futile, (see D's Opp. At pp. 7-end.)

The proposed amendments to Plaintiff's Complaint will not be futile. Denial of a motion to amend based on futility should occur only when "the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Defendants cannot meet this standard as applied to the proposed amendments.

    **1.** **Plaintiff's Amended Complaint States a Viable Claim for Assault Against the Defendants**

Defendants' arguments as to why Plaintiff's amendment to her claims for assault, set forth in her First Cause of Action, is futile, are recycled from their opening and reply briefs in support of their motion to dismiss. Defendants again contend that the claims for assault are preempted by workers compensation.

Plaintiff respectfully submits that the state of South Carolina law is not so limited that a co-worker's assault cannot in any circumstance be imputed to the employer or to the employer's managers, through a theory of ratification, at least under the active and intentional ratification which was presented here. Moreover, *none* of the cases which Defendants have cited state that an employer cannot intentionally ratify and thus become liable for, an intentional tort like assault.

Defendants acknowledge that South Carolina recognizes an exception to workers compensation exclusivity for certain workplace torts. See, S.C. Code 42-1-540. There is a well-recognized exception to the exclusivity of Section 540 "where the injury is not accidental, but rather results from the intentional act of the employer or its alter ego.. . . " *Edens v. Bellini*, 359 S.C. 433, 445, 597 S.E.2d 863, 870 (S.C Ct. App. 2004).

Under South Carolina law, it is also well recognized that intentional torts may be actionable against the defendant co-worker who commits that intentional tort, *see, e.g., Repasky v. Pfizer, Inc.*, 2013 WL 3946230 (D.S.C. 2013).

Plaintiff Ellis alleges that Defendants Harrelson Nissan and the individual Harrelsons are responsible for the tortious acts of their agents Brian Dancey and Maurice Sutter, because Sutter and Dancey's actions were ratified by each of these Defendants. Ratification by a principal of its agent's otherwise unauthorized actions exists upon: (1) acceptance by the principal of the agent's acts; (2) full knowledge of the facts; and (3) circumstances or an affirmative election

3

indicating an intention to adopt the unauthorized arrangements. *See, e.g. , Lincoln v. Aetna Cas. & Sur. Co.,* 300 S.C. 188, 191, 386 S.E.2d. 801, 803 (S.C.Ct. App. 1989) (emphasis added). Even "mere silence or failure of a principal to repudiate the unauthorized act of an agent" can be a ratification, where "the silence or acquiescence in question cannot be explained on any other theory than that of ratification ." *Stiltner v. USAA Cas. Inc.,* 395 S.C. 183, 191-92, 717 S.E.2d 74, 78 (S.C. Ct. App. 2011, citing 2A C.J.S. Agency Sec. 71 (2003).

Here, as stated in the proposed amended complaint, when Louis F. and Robert Harrelson learned of these vicious assaults, they affirmatively ratified them—their ratification was not the result of mere silence or acquiesence. As stated in the amended complaint at para. 119 with respect to the Dancey assault:

> Defendant Harrelson Nissan through its managing agents, Louis F. Harrelson and Bobby Harrelson, acted affirmatively to ratify the actions of Brian Dancey by retaining him in employment and failing to take appropriate and effective action against Brian Dancey as well as by interfering with the police investigation, telling the police to leave the premises, bailing Dancey out of jail, telling Ellis that the Dancey situation was only a personnel matter, and firing witness Michelle Rodriguez after she appeared in court to testify against Dancey.

And as stated regarding the Sutter assault at para. 113:

> Defendant Harrelson Nissan through its managing agents, Louis F. Harrelson and Bobby Harrelson, acted affirmatively to ratify the actions of Maurice Sutter by retaining him in employment and rehiring him, and failing to take appropriate and effective action against their Salesman, Sutter.

Defendants again cites *Dickert v. Metro. Life Ins. Co*., 311 S.C. 218, 428 S.E.2d 700 (S.C. 1993) for the proposition that "Workers' Compensation Law provided Plaintiff's exclusive remedy for claims arising from assault by direct supervisor" (D's Memo. p. 8)  Plaintiff respectfully submits that Defendants have  again incorrectly interpreted the scope of *Dickert.*

In *Dickert*, the Court reversed the decision of the Court of Appeals  "to the extent it holds Co-Employee is absolved of personal liability for his intentional tortious acts committed

4

while in the scope of employment." The *Dickert* court further held that it was "against public policy to extend this [Workers compensation] immunity to the co-employee who commits the intentional injurious act upon another employee." The Court added that "[t]he Workers Compensation Act may not be used as a shield for a co-employee's intentional injurious conduct. This is consistent with our Court's precedent that an employer, acting through an alter ego, may not do so."

Here Ellis' pleading alleges that her co-employees Sutter and Dancey engaged in intentional injurious conduct against her, when they assaulted her (Amended Comp. paras. 20-64). Moreover, the ratification of the assaults by the individual Harrelsons as pled can be found to be similarly intentional—both Bobby and Louis F. Harrelson ratified the assaults by their intentional conduct when Louis Harrelson told the police to leave the day of the assault, as well as when the Harrelsons bailed Dancey out of jail, as pled on information and belief; when they tried to stop Ellis' continued pursuit of the criminal charge against Dancey by telling her that the Dancey matter was a "personnel matter"; and when they told Ellis several days after the crime had been reported that she needed to stop calling the police. Further ratification occurred when they demoted and fired Ellis at least in part due to her pursuit of the Dancey criminal charges. These are intentional acts, committed by alter egos of the employer and thus not preempted by the Workers Compensation Act. *See*, *Stewart v. McClellan's Stores Co.*, 194 S.C. 50, 9 S.E.2d 35 (1940).

Finally, contrary to Defendants' arguments that Plaintiff has not pled " deliberate intent" on the part of the defendants (See D's Mem. p.10) her complaint repeatedly states that both Louis and Robert Harrelson "acted affirmatively to ratify" the harmful acts of Brian Dancey, and then lists each of these acts of intentional ratification. (See Complaint para. 119)

### 2. Plaintiff's Amended Complaint states Viable Claims for Retaliation and Termination under Title VII

Title VII protects employees from adverse employment actions motivated by protected activity, 42 U.S.C. 2000(e)-3(a). The Fourth Circuit has held that in order to establish a prima facie case of retaliation a plaintiff must prove, "that she engaged in a protected activity, that she suffered an adverse employment action, and that the two were causally related." *Glover v. South Carolina Law Enforcement Div.*, 170 F.3d 411, 413 (4th Cir. 1999).

Defendants concede that Plaintiff suffered the adverse action of termination. They also concede that she has pled that she engaged in protected activity, (D's Memo. P. 19) as they must, for the amended complaint makes clear that she repeatedly complained about many of the separate instances of sexual harassment of herself and others which are outlined in detail (see Amended Comp. paras. 65, 68, 69, 70, 74, 78, 79, 80, 92, 142.) The amended complaint also states at para. 141:

> Plaintiff engaged in protected activity [under Title VII] when she complained to Bobby and Louis F. Harrelson and Lloyd Edwards about the assaults and complained about and rejected the harassment outlined in paragraphs 65-80 above. Her complaints were treated with disregard and at times hostility. Eventually she was terminated in whole or in part due to this protected activity.

The termination of Plaintiff, as discussed below regarding her South Carolina wrongful discharge claim, came just days after she complained about one of the final acts of gender discrimination to which she was subjected, the assault by Brian Dancey. Thus, Plaintiff has more than adequately pled the third element of her prima facie case of retaliation; the nexus between her protected activities and her termination.

In contending that Plaintiff's complaints about the assault were not protected activity, Defendants implicitly reject the Fourth Circuit's *en banc* decision on retaliation, *Boyer-Liberto v. Fountainebleu Corp.*, No. 13-1473 (4th Cir. 5/7/15), where the Court upheld an employee's claim for retaliation for reporting harassment which was physically threatening or humiliating, even though it did not necessarily create an actionable hostile environment. In so deciding the Circuit court reversed its stance in *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006). The Court concluded: "under today's decision, employees who reasonably perceive an incident to be physically threatening or humiliating do not have to wait for further harassment before they can seek help from their employers without exposing themselves to retaliation."

Thus Plaintiff's protected activity under Title VII includes her complaints to the police (as well as to Bobby Harrelson and Louis F. Harrelson) that she had been assaulted by Mr. Dancey and Mr. Sutter. Both Sutter and Dancey while assaulting Ellis referred to her by the gender derogatory term "bitch", Mr. Dancey stating yelling "fucking bitch, I'm going to fuck you up.". Thus, there is substantial evidence that the assaults were motivated by Ellis' gender. Ellis' complaints to the police and to the Harrelsons were clearly protected activity as opposition to these and earlier acts of harassment. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005).

The Dancey assault took place on October 11, 2013. Ms. Ellis immediately complained to the Harrelsons, and within a matter of days she was told she would be demoted, and then was terminated on October 23, less than two weeks later. The causal connection between her protected activity and her termination may be established by this very close temporal proximity. It has long been held that such close timing as occurs here will easily establish a claim for retaliation. *Shackelford v. Deloitte & Touche LLP*, 190 F.3d 398, 408 (5th Cir., 1999)("Indeed,

7

the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment.") and *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.1997) (holding that close timing between protected activity and adverse employment action may be sufficient to establish a "causal connection." )

Finally, there is ample pleading of pretext in the reason given for Plaintiff's termination. The amended complaint states that Louis F. Harrrelson's complaints about Ellis' work after she returned after the Dancey assault were false, that he was trying to goad her into a confrontation, (Amended Compl. Para. 82) and that during the time between the Dancey assault and her termination, Bobby referred to her as "the biggest asshole in the dealership outside of my dad", told her to stop calling the police, told her that he told her he was demoting her to assistant office manager (from Controller) because of her "attitude" and then changed his decision within a couple of days, and complaining of her over-aggressiveness. (Amended Compl. Paras. 85-90). Plaintiff also alleges that although she was accused of paperwork discrepancies just before she was fired, Mr. Harrelson knew that there were no such discrepancies and was aware he was falsely accusing Ellis. (Amended Compl. Paras. 90-91).

Plaintiff also states a related claim for gender based termination under Title VII. In the amended complaint, Plaintiff states

> Mr. Harrelson terminated Ms. Ellis at least in part due to her gender including her repeated complaints about and opposition to sexual harassment, and her clear statements that she wanted Brian Dancey to be fired, her refusal to stop talking with the police when they came to the dealership the day of the assault, her repeated phone calls to the police, complaints about Dancey's presence and statements that she would pursue the criminal charges against him which were filed.

(Amended Compl. Para. 92)

To state a claim under Title VII for termination based on gender, the Plaintiff must allege facts which support a prima facie case of discrimination, which include the following elements:

8

a) her gender; b) that she was performing work meeting the employer's legitimate expectations, c) that she suffered an adverse action, and d) some evidence that the adverse action was motivated in whole or in part by gender. *White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004); *Miles v. Dell., Inc.*, 429 F.3d 480, 486-87 (4th Cir. 2006).

Here there is no dispute that Plaintiff sufficiently alleged she is a female employee who was wrongfully terminated from her position, very shortly after engaging in the protected activity of objecting to the Dancey assault. In the amended complaint she states facts which if found by the fact-finder show that she was meeting the employer's legitimate expectations, and that the termination was pretextual. Thus, she has adequately pled a claim under Title VII for gender based discriminatory termination.

**3. Plaintiff's Amended Complaint States a Viable Claim for Wrongful Termination in Violation of South Carolina Public Policy**

Plaintiff's wrongful termination in violation of public policy claim falls under the South Carolina public policy which is stated in S.C. Code 16-9-340:

> It is unlawful for a person by threat or force to:
> (1) intimidate or impede a judge, magistrate, juror, or potential juror or witness; . . . . . or
> (2) destroy, impede, or attempt to obstruct or impede the administration of justice in any court . . . .

Here, the introduction to Ellis' proposed amended complaint alleges that

> Her complaints to law enforcement about [the criminal assaults], opposition to these and other acts of sexual harassment and determination to pursue a criminal complaint about the second assault resulted in retaliation. Ultimately Ellis was fired by Defendants.

Ellis' complaint makes clear that she alleges that she was fired, at least in part, because she refused to go along with Mr. Louis F. Harrelson's attempts to obstruct and impede the

9

administration of justice, which violated the South Carolina public policies set forth in S.C. Code 16-9-340.

The complaint sets out in detail the circumstantial evidence which supports this conclusion. The recitation of evidence begins with the events of October 11, 2013, when Mr. Dancey threatened Ellis with serious bodily harm and the police were called by her co-worker, Michelle Rodriguez (Amended Comp. Para. 53-56), who was later fired, the same day she appeared in a court hearing on the Dancey criminal charge (Amended Compl. Para. 93).

As soon as police arrived, they were confronted by Defendant Louis F. Harrelson, who was standing with Dancey. Harrelson told the police "get off my property." Defendant Louis F. Harrelson told the police in Ellis' presence that "nobody's filing a complaint," and that they needed to "go on and go." While the police were at the facility, Harrelson told them to leave three separate times. (Amended Compl. Para. 57)

The evidence in support of the wrongful discharge claim continues when Louis F. Harrelson bailed Dancey out of jail after Mr. Dancey was charged with disorderly conduct offering violence on October 14, 2013. (Amended Compl. Para. 58, 63) Both Bobby and Louis Harrelson refused to discipline Dancey, and invited him back to work at the dealership within a few days of the assault. (Amended Compl. Para. 62)

On October 18, 2013, Ellis called the police about Dancey's presence because she believe there was a no-contact order, and when Bobby Harrelson found out, he told her to "stop calling the police", that the matter with Dancey was simply a "personnel matter". (Amended Compl. Para. 57, 86-87. 89). Then, Bobby Harrelson demoted Ellis the same day. (Amended Compl. Para. 88-89) Louis F. Harrelson terminated Ellis on October 23, 2013, for completely pretextual reasons (Amended Compl. Para. 90-92)

Ellis further alleges:

Mr. Harrelson terminated Ms. Ellis at least in part due to her gender including her repeated complaints about and opposition to sexual harassment, and her clear statements that she wanted Brian Dancey to be fired, her refusal to stop talking with the police when they came to the dealership the day of the assault, her repeated phone calls to the police, complaints about Dancey's presence and statements that she would pursue the criminal charges against him which were filed.

(Amended Compl. Para. 92) Thus, contrary to Defendants arguments, Ellis' pleadings establish that her claim falls within the public policies enunciated in S.C. Code 16-9-340. She was terminated (at least in part) because she refused to stop talking with the police when they came to the dealership the day she was assaulted, she kept calling the police after Dancey was charged, which the Harrelsons were aware of, and she told the Harrelsons "she would pursue the criminal charges against [Dancey] which were filed." It is very clear that all of these acts were resisted by the Harrelsons—Bobby told her not to call the police, told her the matter with Dancey was "personnel" and therefore by implication not criminal, and finally Mr. Harrelson fired her within a few days of Ellis' refusal to "back down." Mr. Dancey later pled guilty to the charge of Disorderly Conduct.

Defendants' argument for dismissal of Plaintiff's public policy claim again relies on the recent South Carolina Supreme Court decision, *Taghivand v. Rite Aid Corporation*, 768 S.E.2d 385, yet this decision actually provides substantial support for Plaintiff Ellis' claim, as stated in Plaintiff's memorandum in opposition to the motion to dismiss.

In *Taghivand* the store manager alleged that he was fired because he had erroneously reported a customer who he suspected of shoplifting to the police. As stated by the *Taghivand* court:

The fallacy underlying Taghivand's argument is that his employer terminated him in response to the reporting of a crime, not to influence or impede his further involvement in

11

any proceeding relating to that crime.  The thrust of Taghivand's argument is not that section 16-9-340 applies to him as a potential witness in the reported shoplifting but rather that a broad public policy favoring the reporting of crimes can be derived from the legislatures decision to protect potential witnesses.

Thus,  Ms. Ellis' claims are materially distinct from those in *Taghivand*.  There, the only protected activity of the plaintiff was to *report* a suspected shoplifter, and the only articulated retaliatory motive was based on the report which turned out to be incorrect, and which violated company procedures.   Here Ellis' evidence shows that the Harrelsons terminated her in retaliation for her determination to pursue prosecution of criminal charges for assault, "her refusal to stop talking with the police when they came to the dealership the day of the assault, her repeated phone calls to the police, complaints about Dancey's presence  and statements that she would pursue the criminal charges against him which were filed."

Thus, unlike *Taghivand*, after the criminal report was made Ellis persisted in pursuing the legal claims against Dancey,  and the Harrelsons were well aware that Ellis intended not to drop the complaint against Dancey and continue to pursue it to its conclusion, which took place weeks later when Dancey pled guilty.  Ellis kept contacting the police even after the charges were filed, which brought immediate retaliation from Bobby Harrelson who told Ellis to stop calling the police and then almost immediately, told her he was demoting her. Bobby Harrelson subsequently told Ellis that the issue with Dancey was "personnel."  And within two more days, she was fired.

Defendants also incorrectly state that since issuing the *Taghivand* decision the South Carolina courts have not extended the bounds of the wrongful termination claim.  In fact, the case that Defendants cite in their most recent brief,  *Donevant v. Town of Surfside Beach*, 2015 SC App. LEXIS 202 (8/26/15) expands the protection of the WDPP claim in South Carolina.  In *Donevant*, the court did not find that the plaintiff was fired in violation of criminal law,  or

12

because she had refused to violate the criminal law, which Defendants contend are the only basis for a WDPP claim. The plaintiff was a Director of Planning for Defendant, who alleged she was fired in retaliation for issuing a stop work order to a construction site which did not have proper permits for the work being done.  The defendant contended that her termination was the result of "operational changes".  The Supreme Court found that the plaintiff was following her job requirements by issuing stop work orders.  Because she had been instructed not to change prior acts of her supervisor, she was in essence being required "not to perform her legal duty. . ." of issuing the stop work orders.  The Court noted that "if Donevant had followed [her supervisor]s directives and not taken action. . . she could have been charged with misconduct in office . . ". The Court then concluded that her firing was "effectively" the equivalent of a termination for refusing to violate the law, and held that this was a violation of South Carolina public policy which allowed her claim to proceed.

The *Donevant* court also noted that the Court in *Barron* specifically stated that the public policy exception does not only apply "in situations where the employers asks the employee to violate the law or the reasons for the termination itself is a violation of criminal law."  *See also*, *Crutchfield v. Pfizer*, 2013 WL 2897023 (D.S.C. 2013).

Therefore, because Plaintiff has adequately re-pled her claim of wrongful discharge in violation of the public policies of South Carolina, her motion to amend should be allowed to include this claim.<sup>1</sup>

**Conclusion**

The Fourth Circuit has interpreted Federal Rule of Civil Procedure 15(a) to mean that leave to amend "should be denied only when the amendment would be prejudicial to the

---

[1] Plaintiff relies on her opening brief to support her amendment to the complaint with respect to her existing Title VII allegations of sexual harassment, as well as the two new causes of action.

opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Laber v. Harvey*, 438 F.3d 404, 426-427 (4th Cir. 2006); *citing Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986).

Here, no circumstances for denying Ms. Ellis' proposed amendments exist. The proposed amendments are made in the infancy of the litigation. This lawsuit was filed in State court in July and removed by Defendants on August 27, 2015, less than two months ago. There is no prejudice to Defendants because the amendment will not result in any additional discovery that will need to be taken by the Defendant, as discovery has not yet commenced. For the reasons stated above, the amendments will not be futile.

Plaintiff motion to amend the underlying Complaint to add additional facts in support of two of the existing claims, assault and violations of Title VII, to refine the statement of the claims of assault, violation of Title VII and wrongful discharge in violation of South Carolina public policy, and to add two additional causes of actions based on events which arose recently should be granted.

This 28th day of October, 2015.

Kassel McVey, Attorneys at Law

s/John D. Kassel
John D. Kassel (Fed ID 2278)
jkassel@kassellaw.com
Theile B. McVey (SC Bar No. 16682)
1330 Laurel Street
P.O. Box 1476
Columbia, S.C. 29202-1476
(803) 256-4242
(803) 256-1952 (Fax)
ATTORNEYS FOR THE PLAINTIFF