**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| TRYNIE ELLIS, | ) | |
| | ) | C/A No.: 0:15-cv-3322-MBS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| HARRELSON NISSAN OF SOUTH | ) | |
| CAROLINA, LLC; LOUIS F. | ) | |
| HARRELSON; and ROBERT | ) | |
| HARRELSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Trynie Ellis ("Plaintiff") brings this action against her former employer, Harrelson Nissan of South Carolina, LLC ("Harrelson Nissan") and its managing agents, Louis F. Harrelson and Robert Harrelson (collectively "Defendants"), asserting state law claims of tortious interference with contract and slander. ECF No. 47. Plaintiff also brings claims solely against Harrelson Nissan for harassment, retaliation, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) *et seq*. ECF No. 47. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2), D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West. On October 21, 2016, Defendants submitted a Motion for Summary Judgment as to all of Plaintiff's claims. ECF No. 70.

## I.    FACTS AND PROCEDURAL HISTORY[1]

Plaintiff, who is a female, worked for Defendants for over ten years. ECF. No. 47 at 7. The ten-year span was comprised of two separate periods. This litigation is based on her most recent span of employment by Harrelson Nissan, during which she worked as the Controller from

---

[1] The following facts are either undisputed or viewed in the light most favorable to the Plaintiff.

March of 2010 until October 23, 2013.[2]  *Id.*at 8.  Plaintiff alleges that during this time, she was subject to gender-based harassment as well as two instances of assault (the "Sutter Incident" and the "Dancey Incident") committed by fellow co-corkers.  *Id.* at 20–78.  The assaults, Plaintiff attests, were motivated at least in part by Plaintiff's gender. *Id.* at 65.

The Sutter Incident[3] involved a co-worker who threatened Plaintiff after she informed him that he would have to pay for damage he caused to a Harrelson Nissan-owned golf cart. ECF No. 47 at 5.  After Plaintiff advised Sutter that the cost of repair would be deducted from his paycheck, Sutter left Harrelson Nissan only to return a short time later with several family members.  *Id.* Sutter "loudly told those working at the dealership that he and his family were there to 'beat up' [Plaintiff]."  *Id.*  Sutter first made these and other remarks—referring to Plaintiff as "b***h" and stating that "he was going to grab her by her hair and drag her in the parking lot"—in Plaintiff's office, but then "continued to rant and threaten [Plaintiff] as he went through the showroom, screaming at [Plaintiff]."  *Id.* at 5–6.  According to Plaintiff, Robert Harrelson was present in Plaintiff's office during Sutter's assault, but did not intervene.  *Id.* at 5.  Sutter continued to yell and threaten Plaintiff until the police arrived.  *Id.* at 6.  Plaintiff avers that Sutter quit his job shortly after the incident, but was rehired "almost immediately" by Louis F. Harrelson over Plaintiff's objections. *Id.*

The Dancey Incident occurred on October 11, 2013.  *Id.* at 7.  Dancey entered Plaintiff's office threatening Plaintiff and referring to Plaintiff as "b***h."  *Id*. at 8.  According to Plaintiff,

---

[2] As discussed within, there is a factual dispute as to whether Plaintiff resigned from employment on this date or was terminated.

[3] The court cannot determine the date of this incident based on the record. Plaintiff notes however, that it occurred during her time as Controller, which was during her second employment span.  *See* ECF 72 at 2.

Dancey "came at" Plaintiff, "his face full of rage, stuck his finger in her face, and leaned over within inches of her face[,]" allowing spit to get onto her cheek. *Id.* Co-worker Michelle Rodriquez witnessed the incident and called 911 to report it. *Id.*

When police arrived on the scene, Louis F. Harrelson and Dancey met them, and Louis F. Harrelson told the police to "get off [his] property." *Id.* at 9. In Plaintiff's presence, Louis F. Harrelson told the police that "nobody's filing a complaint," and that they needed to leave. *Id.* In his deposition, Louis F. Harrelson indicated that he told police that "it doesn't look very good . . . for a police car [to be] in front of the building with a blue light blinking," and asked if the police would "do it as quickly as you can so you can leave." ECF No. 72–10, at 16. Louis F. Harrelson testified that, to him, the incident between Dancey and Plaintiff was "trivial—it was very trivial." *Id.* at 20. He also said that once the police left, "as far as I was concerned it was over." *Id.* at 21. The Police Incident Report of October 11, 2013, shows that Dancey was charged with "disorderly conduct offering violence." ECF No. 72–13 at 5. Dancey was not terminated, but instead was sent to work at a used car lot that was near Harrelson Nissan. Dancey returned to Harrelson Nissan within a few days. ECF No. 47 at 9.

Plaintiff further alleges several additional instances of sexual harassment experienced at the dealership—viewing of pornography in the workplace by co-workers, weekly references made by Harrelson Nissan's General Manager, Lloyd Edwards, asking if Plaintiff had given "Mr. H" a "blow job," and Plaintiff being told by Robert Harrelson and Lloyd Edwards that Plaintiff "wanted them"—to name a few. ECF No. 47 at 11–15. The Magistrate Judge's Report discusses in greater detail the various other examples of sexual harassment that Plaintiff alleges occurred during her employment. *See* ECF No. 78 at 5–10. The court incorporates those facts without recitation.

According to Plaintiff, she launched numerous complaints about her treatment, but Defendants largely ignored these complaints and did not punish or terminate the offending co-workers. *Id.* at 79–80. Specifically, Plaintiff alleges she advised Robert Harrelson that she wanted Dancey to be fired after the incident, and she continued to raise her concerns for several days after the incident. *See* ECF No. 47 at 16–17.

It is undisputed that Plaintiff's last day of work at Harrelson Nissan was October 23, 2013. *Id.* at 90. However, Plaintiff takes the position that she was terminated that day, while Defendants claim she resigned from her position. *Compare* ECF No. 72 at 18–21, *with* ECF No. 70-1 at 7–8. In the days after the Dancey Incident Plaintiff alleges that Robert Harrelson made comments such as, "I've had enough . . . if you want to be fired for insubordination, then I will," "quit if you want to," and "If I need to fire you, I will." ECF No. 47 at 15. On October 18, 2013, Plaintiff saw Dancey at Harrelson Nissan, and believing there was a "no contact" order in place against Dancy, she called the police. *Id.* Robert Harrelson told Plaintiff to stop calling the police, and later sent Plaintiff a text message informing her that he was going to demote her. *Id.* When Plaintiff asked why, Robert Harrelson replied, "Need a change . . . Attitude . . . ." *Id.* at 16. A demotion never occurred, however. ECF No. 42 at 7.

According to Plaintiff, when she walked into work on October 23, she was told by one of her co-workers that she was going to get fired. ECF No. 72-1 at 14. Later that day while Plaintiff was in Louis F. Harrelson's office discussing a paperwork issue, Louis F. Harrelson sated, "I am sick of you, I'm done with you, get out; I don't want to hear what you have to say, get out, I'm sick of you." *Id.* Robert Harrelson was not at Harrelson Nissan that day, so Plaintiff called him "immediately to inform him of the termination." *Id.* Plaintiff told Robert Harrelson that his "dad had just fired [her] and [Robert Harrelson's] only response was 'OK.' Bobby never said [Plaintiff]

4

was not fired that day. When [Plaintiff] added that [she] was packing up [her] things and asked if [Robert Harrelson] wanted someone to walk [her] out, he hung up on [Plaintiff] or the phone line went dead." *Id.* at 12–13. According to Defendants, on or around October 24, 2013, Robert Harrelson left Plaintiff a voicemail and several subsequent text messages advising Plaintiff that Louis F. Harrelson could not fire her and that he was assuming that she was quitting because she had not answered or returned his calls. ECF No. 70-1 at 8.

Following her termination, Plaintiff sought employment with other dealerships. *Id.* at 98. In June 2015, Plaintiff was offered and accepted a position at a dealership. ECF No. 72-1 at 16. Shortly thereafter, Plaintiff was informed that the dealership could "no longer keep [her] due to [her] employment with the Harrelsons." *Id.* The dealership eventually informed Plaintiff that it would not hire her based on an "allegation that [she] had embezzled money from a former employer." *Id.* at 17.

On July 10, 2015, Plaintiff filed suit in the Court of Common Pleas in York County, South Carolina. Defendants removed the case to this court on August 20, 2015. ECF No. 1. Plaintiff's initial Complaint included claims against Defendants for assault, negligent supervision and retention, and wrongful termination in violation of public policy; and claims against Harrelson Nissan for harassment, discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964. ECF No. 1-1. On August 27, 2015, Defendants moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). ECF No. 4. Plaintiff opposed the motion, ECF No. 8, and moved to file an amended complaint adding claims of tortious interference with contract and slander. ECF No. 11. Defendants opposed the request for amendment. ECF No. 24. On March 21, 2016, the court, upon the recommendation of the Magistrate Judge, issued an Order ("March 2016 Order") that dismissed Plaintiff's claims of assault, negligent supervision and retention, and

wrongful termination in violation of public policy. ECF No. 42. However, the March 2016 Order granted Plaintiff's motion to amend her complaint, which included her Title VII claims as well as her state-law claims of tortious interference with contract and slander. *Id*. Plaintiff filed the Amended Complaint on March 29, 2016. ECF No. 47. Subsequently, on October 21, 2016, Defendants filed a Motion for Summary Judgment as to all of Plaintiff's remaining claims. ECF No. 70. Plaintiff filed a response in opposition on November 7, 2016, to which Defendants filed a reply on November 17, 2016.

On May 22, 2017, the Magistrate Judge prepared a thorough Report and Recommendation ("Report") and recommended that Defendants' Motion for Summary Judgment should be granted in part and denied in part. ECF No. 78. Defendants filed partial objections to the Report on June 5, 2017, ECF No. 79, to which Plaintiff filed a reply on June 19, 2017. ECF No. 80.

## II. LEGAL STANDARDS

### A. Summary Judgment

Pursuant to Federal Rules of Civil Procedure Rule 56(a), the court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law. The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 24, 251-52 (1986). Any inference drawn from the facts should be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S 317-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific

facts showing there is a genuine issue of fact. A "mere scintilla" of evidence is insufficient to overcome the summary judgment motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

**B.      Burden of Proof in Title VII Claims**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may demonstrate a violation of Title VII through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

For status-based discrimination claims, such as harassment or discrimination claims based on gender or race, the employee must "show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013). While intermediate evidentiary burdens shift back and forth, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *See Reeves,* 530 U.S. at 146–47 ("The ultimate question is whether the employer intentionally discriminated,

and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'") (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993)).

## C.    Magistrate Judge Review

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight and the responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. *Diamond v. Colonia Life & Acc. Ins. Co*., 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Opriano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## III.    DISCUSSION

## A.    Plaintiff's Title VII Claims

Plaintiff's Title VII causes of action include claims for gender discrimination on the basis of harassment, retaliation, and wrongful termination against Harrelson Nissan. *See* ECF No. 47 at 19. Plaintiff further seeks punitive damages under Title VII. *Id.* Harrelson Nissan seeks summary judgment as to each of these claims. In her motion in opposition to Defendants' summary judgment request, Plaintiff asserts that she has made a prima facie case for each of her Title VII causes of action. Plaintiff, however, has only presented circumstantial evidence of discrimination. Under the *McDonnell Douglas* burden-shifting framework the burden then shifts to Harrelson

Nissan to produce evidence of a legitimate, non-discriminatory reason for its employment acts. However, Harrelson Nissan has failed to address the remaining analysis. Therefore, agreeing that Plaintiff has made a prima facie showing as to each cause of action, the Magistrate Judge recommends that summary judgment be denied as to Plaintiff's Title VII claims for harassment, retaliation, and wrongful termination. The Magistrate Judge further recommends that, should the court go forward with Plaintiff's Title VII claims, Defendants' motion for summary judgment as to Plaintiff's punitive damages claim should also be denied. Defendants have partial objections to these recommendations that this court will address in turn.

### 1. Defendant Harrelson Nissan and Defendant Robert Harrelson's Partial Objections to the Report and Recommendation

Defendant Harrelson Nissan has made four specific objections to the Report. In short, Harrelson Nissan objects to the Magistrate Judge's recommendation that: (1) Plaintiff's Title VII claim for gender discrimination on the basis of harassment be permitted to go forward; (2) Plaintiff's Title VII claim for gender discrimination on the basis of retaliation be permitted to go forward; (3) Plaintiff's Title VII claim for gender discrimination on the basis of wrongful termination be permitted to go forward; and (4) Plaintiff's claim for punitive damages under Title VII be permitted to go forward.

#### a. Title VII claim for gender discrimination on the basis of harassment

Title VII makes it unlawful for employers to discriminate against an individual based on race, color, religion, sex, or national origin. 42 U.S.C.A. § 2000e-2(a)(1). To that end, employers are prohibited from requiring individuals to work in hostile work environments. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 272 (4th Cir. 2015). A work environment is hostile when "the workplace [is]. . . permeated with discriminatory behavior that is sufficiently severe or pervasive

to create a discriminatorily hostile or abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 17 (1993).

　　To establish a prima facie case for a hostile work environment claim under anti-discrimination law, "a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 221 (4th Cir. 2016) (quoting *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)); *see also Baqir v. Principi*, 434 F.3d 733, 746 (4th Cir. 2006). The third element—whether the unwelcome conduct was "severe or pervasive"—has "both subjective and objective components." *Ocheltree v. Scolion Producs., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003). First, Plaintiff must show that she "subjectively perceive[d] the environment to be abusive." *Harris*, 510 U.S. at 21–22. Next, Plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81–82 (1998). As to the fourth element, imputation depends on the status of the harassers and whether a tangible employment action took place. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807–08 (1989).

　　The Magistrate Judge initially notes that the Fourth Circuit Court of Appeals counsels against piecemeal consideration of incidents in analyzing whether an employee believed a hostile work environment exists. ECF No. 78 at 16; *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 417–18 (4th Cir. 2015) (citing *Boyer-Liberto*, 786 F.3d. at 282) (concluding that the court must examine the course of conduct through a panoramic lens, viewing the individual scenes in their

broader context and judging the picture as a whole). While the Magistrate Judge noted that both *Demasters* and *Boyer-Liberto* were focused on Title VII retaliation claims, the court agrees that such guidance logically applies to considering whether a reasonable juror might determine Plaintiff established a hostile work environment. However, because Harrelson Nissan focuses on specific events separately in arguing which element or elements the Plaintiff has not demonstrated, the Magistrate Judge, to the extent possible, addresses each of the challenges expressed by Harrelson Nissan. *See* ECF No. 78 at 16. Accordingly, the Magistrate Judge concludes that Plaintiff provided sufficient evidence to support her Title VII harassment claim. *Id.* at 42.

Harrelson Nissan contends the Magistrate Judge erred in concluding that Plaintiff's Title VII claim for gender discrimination on the basis of harassment should be permitted to go forward.[4] ECF No. 79 at 6–11. Harrelson Nissan first attempts to distinguish this case from *DeMasters* by noting that Plaintiff has asserted both non gender-based conduct and gender-based conduct to support her hostile work environment claim. ECF No. 79 at 8. Specifically, Harrelson Nissan asserts that while the Sutton and Dancey Incidents comprised the most severe instances of conduct, the incidents were not based on Plaintiff's sex, and therefore should not be considered in the hostile work environment analysis. *Id.* Further, Harrelson Nissan contends that without inclusion of the Sutton and Dancey Incidents, Plaintiff's remaining allegations—including the "complained-of use of vulgar and anti-female statements, viewing of pornography, and other conduct"—though perhaps "gender-motivated," do not rise to the objective standard of "severity and pervasiveness" required by Title VII. *Id* at 9–10. Instead, Harrelson Nissan claims that the conduct reported was the type of generalized "vulgarity" that Title VII is not intended to purge from the workplace. ECF

---

[4] Harrelson Nissan dose not challenge the "unwelcome conduct" element of the hostile work environment analysis.

70-1 at 18.  Lastly, Harrelson Nissan purports that, even if such alleged instances of harassment satisfy the first three elements, the instances of harassment cannot be imputed to Harrelson Nissan. ECF No. 79 at 11.

### i. *Because of sex*

The court must determine whether Plaintiff has provided sufficient evidence from which a reasonable jury could conclude that the Sutter and Dancey Incidents took place because of Plaintiff's sex.  *See EEOC v. Central Wholesalers, Inc.,* 573 F.3d 167, 175 (4th Cir. 2009).  The Magistrate Judge stated that such analysis does not take place in a vacuum.  Rather, it is appropriate that these incidents be considered in the "totality of the circumstances," which would include other occurrences and other evidence discussed below in considering Harrelson Nissan's partial challenge of the "severe and pervasive" prong.  *See Harris*, 510 U.S. at 22–23.  For example, in *Central Wholesalers*, the Fourth Circuit determined summary judgment was inappropriate as to the "because of" prong, noting evidence that the plaintiff and others had been subjected to pornography at the office and that "one or more of [the plaintiff's] co-workers used the word b***h on a daily basis when referring to women[.]" *Id.* at 175. The court noted that during a verbal incident at issue the plaintiff had been called a "b***h a number of times[.]" *Id.*

Here, Plaintiff has provided evidence indicating that the word "b***h" was used extensively during both the Sutter and Dancey Incidents.  ECF No. 47 at 5–6, 8.  Thus, the court concludes that the Magistrate Judge did not err in finding that the Sutter and Dancey Incidents may be considered within Plaintiff's hostile work environment analysis.

### ii. *Severe and pervasive*

Whether an environment is objectively hostile or abusive depends on factors such as: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Harrelson Nissan contends that the Magistrate Judge erred in finding that the conduct alleged by Plaintiff satisfied the "severe and pervasive" prong of the hostile work environment analysis. ECF No. 79 at 9. However, while Harrelson Nissan claims the use of vulgar and anti-female statements, viewing of pornography, and other conduct of which Plaintiff complained did not meet the objective standard of severe and pervasive, Harrelson Nissan does not provide any further discussion or analysis to support its statement. *Id.* Plaintiff, however, provides numerous accounts of situations that a jury could find the harassment complained of was far more extensive than just "generalized vulgarity." *See* ECF No. 72 at 5–10, 27–30.

Having considered all proffered evidence in the light most favorable to Plaintiff, the court finds that the Magistrate Judge did not err in her conclusion that Plaintiff has established the objective portion of the severe-or-pervasive prong. Plaintiff's evidence, considered as a whole, provides sufficient evidence of conduct that a reasonable person in Plaintiff's position could have found to be hostile or abusive. *See Oncale*, 523 U.S. at 81-82.

### iii.    Imputation to Harrelson Nissan

Whether alleged harassing conduct may be imputed to the victim's employer depends on the status of the harasser and whether a tangible action took place. *See Burlington Indus., Inc.*, 524 U.S. at 764–65; *Faragher,* 524 U.S. at 807–08. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). However, in cases where the harasser is the supervisor, where the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. *Id.* But if no tangible employment action is taken, the employer may

escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Id.*

Harrelson Nissan contends that the Magistrate Judge erred in concluding that summary judgment should be denied as to imputation of liability. ECF No. 79 at 10. In her Report, the Magistrate Judge indicates that both parties focus on different issues in briefing the imputation prong of Plaintiff's hostile works environment claim. ECF No. 78 at 24–25. Harrelson Nissan focuses on specific incidents and events involving Plaintiff's co-workers, such as the Sutter and Dancey Incident, but does not address the actions by supervisors[5] such as Louis F. Harrelson and Robert Harrelson raised in Plaintiff's Amended Complaint and Memorandum in Opposition to Defendants Motion for Summary Judgment. *Id*. *Compare* ECF No. 47 at 11–15; ECF No. 72 at 30, *with* ECF No. 70-1 at 16–18; ECF No. 73 at 2–4; ECF No. 79 at 10–11. According to Harrelson Nissan, Defendants took "reasonable action to respond to these incidents complained of by Plaintiff for which they had knowledge." ECF No. 79 at 10. Conversely, Plaintiff focuses on acts by Harrelson Nissan's "principals, Louis F. Harrelson, Robert Harrelson and Lloyd Edwards . . . " and argues that Harrelson Nissan is strictly liable for the actions of such managers. *Id*. Alternatively, Plaintiff further argues that, even if Harrelson Nissan attempted to assert an affirmative defense under *Ellerth* and *Faragher*, liability would still be imputed to Harrelson

---

[5] The parties do not discuss which individuals would be Harrelson Nissan's supervisors for the purpose of imputation, so the Magistrate Judge assumed without deciding that Louis F. Harrelson and Robert Harrelson would be considered Plaintiff's supervisors. The court agrees.

Nissan because it failed to exercise reasonable care to prevent and correct any harassing behavior.[6]
ECF No. 72 at 30.

Notwithstanding the different issues and burdens of proof asserted by both parties regarding the imputation prong, the Magistrate Judge properly noted that there is a question of fact as to whether liability can be imputed to Harrelson Nissan. *See* ECF No. 78 at 25–26. Specifically, Harrelson Nissan failed to address any aspect of Plaintiff's imputation argument—categorizing the harassers as supervisors, not co-workers—on reply. *See generally* ECF No. 73. However, Plaintiff has provided a litany of examples from the record to support imputation, whether the harassers be supervisors or co-workers. ECF No. 72 at 5–22. The court agrees with the Magistrate Judge's analysis that, as to the actions of supervisors set out above—including pornography in the workplace and continued sexually-related comments—imputation would be automatic. ECF No. 78 at 27; *Vance*, 133 S. Ct. at 2439. The court further agrees that as to behaviors of co-workers, issues of fact exist as to whether Harrelson Nissan acted negligently in controlling work conditions. ECF No. 78 at 27. The Magistrate Judge correctly notes:

> that available evidence regarding the regular use of terms such as "b***h" and the apparently lackadaisical attitude toward pornography and sexually-tinged discussions in the workplace, *see* ECF No. 72-9 at 43 (in context of pornography question, indicating it is "hard to control" who gets on computers), and actions of managers in investigating and controlling the harassing environment, *id.* at 42 (indicating Robert Harrelson was aware that General Manager Edwards "liked to joke about sexual things," but "not like he used to"), present issues of fact for consideration by a jury in considering whether the acts of coworkers are also imputable to Dealership.

*Id.* Thus, the court concludes that the Magistrate Judge did not err.

---

[6] The Magistrate Judge notes, and the court agrees, that Defendants have not pleaded the *Ellerth* and *Faragher* affirmative defense. *See* ECF No. 50 at 12.

The court finds that Plaintiff has established a prima facie case for a hostile work environment claim under anti-discrimination law. Harrelson Nissan's motion for summary judgment on Plaintiff's Title VII claim for harassment is denied.

b.    Title VII claim for gender discrimination on the basis of retaliation

Title VII proscribes discrimination against an employee because, in relevant part, she "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). Employees engage in protected oppositional activity when, *inter alia*, they "complain to their superiors about suspected violations of Title VII." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.,* 333 F.3d 536, 543-44 (4th Cir. 2003). "To establish a prima facie case of retaliation in contravention of Title VII, a plaintiff must prove '(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto*, 786 F.3d at 281 (quoting *EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405–06 (4th Cir. 2005)).

Harrelson Nissan contends that the Magistrate Judge erred in finding that there is sufficient evidence to create a dispute of material fact regarding the issue of whether Plaintiff was terminated on October 23, 2013. ECF No. 79 at 11. Harrelson Nissan does not challenge the first and third elements of Plaintiff's retaliation claim; Plaintiff has shown a protected activity and a causal link to what she claims to be an adverse event. *See Ellis v. Harrelson Nissan of S.C., LLC*, No. CV 0:15-3322-MBS-KDW, 2016 WL 1084292, at *5 (D.S.C. Mar. 21, 2016) (Order denying motion to dismiss; noting Plaintiff viewed the alleged assaults, including the October 2013 Dancey assault, as part of a broader hostile work environment and finding the reporting of the Sutter and Dancey assaults to be "protected activities" for purposes of Defendants' Rule 12 challenge). Instead, Harrelson Nissan seeks summary judgment only

on the ground that no adverse employment was undertaken against Plaintiff. ECF No. 70-1 at 20.

Considering the facts in the light most favorable to Plaintiff, the Magistrate Judge found that there was an issue of fact as to whether an adverse employment action took place. ECF No. 78 at 31. Although Harrelson Nissan submits that summary judgment is appropriate based on the "undisputed evidence [that] demonstrates that Plaintiff was not, in fact, terminated, but rather abandoned her job," ECF No. 73 at 2; ECF No. 79 at 11, a reasonable juror considering all of the above evidence could agree that Plaintiff was terminated on October 23, 2013. *See Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 331–32 (4th Cir. 2012) (in context of whether tangible employment action took place in harassment claim, reversing grant of summary judgment because issues of fact surrounded whether the plaintiff was terminated during meeting during which she was presented a severance agreement, irrespective of later evidence of employer's assuring her she had not been terminated); *cf. Alshehabi v. Hymans Seafood Co., Inc.*, No. 2:14-CV-2724-PMD, 2016 WL 3552001, at *5 (D.S.C. June 30, 2016) (in different context, finding issues of fact existed as to whether plaintiff had quit his job or whether employer fired or failed to re-hire him for discriminatory reasons). Thus, the court concludes the Magistrate Judge did not err.

The court finds that Plaintiff has established a prima facie case for a retaliation claim under anti-discrimination law. Harrelson Nissan's motion for summary judgment on Plaintiff's retaliation claim is denied.

c. <u>Title VII claim for gender discrimination on the basis of wrongful termination</u>

Title VII prohibits employers from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C.A. § 2000e–2(a).  Absent direct evidence, the elements of a prima facie case of Title VII  discrimination are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated  employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). The fourth prong may also be satisfied by demonstrating the position at issue was filled by someone outside the protected class or there is "some other evidence sufficient to give rise to an inference of unlawful discrimination." *Petrosyan v. Delfin Grp. U.S.A., LLC*, No. 2:13-CV- 2990-PMD, 2015 WL 685266, at *6 (D.S.C. Feb. 18, 2015) (citations omitted); *see also Ennis,* 53 F.3d at 58 (noting the exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged).

Harrelson Nissan again contends that the Magistrate Judge erred in finding that there is sufficient evidence to create a dispute of material fact regarding the issue of whether Plaintiff was terminated on October 23, 2013.  ECF No. 79 at 12.  For the same reasons stated above, the court concludes that the Magistrate Judge did not err.  Plaintiff has presented a jury question as to whether she was terminated by Louis F. Harrelson on October 23, 2013.

Alternatively, Harrelson Nissan claims that even if Plaintiff was terminated by Louis F. Harrelson, Plaintiff's termination was not on the basis of her gender.  Harrelson Nissan states that "Plaintiff's only evidence that Louis F. Harrelson fired her because of her gender is her own self-

18

serving testimony that [Louis F. Harrelson] felt she should 'know [her] place' and '[Louis F. Harrelson] simply does not tolerate women telling him what to do." ECF No. 79 at 12. Harrelson Nissan thus concluded that "because there is no admissible evidence of any discriminatory animus in [Louis F. Harrelson's] alleged actions, Plaintiff's wrongful termination claim should be dismissed." *Id.*

In her Report, the Magistrate Judge notes that Plaintiff has provided sufficient competent evidence from which a reasonable jury could find that her gender was a reason for her termination. ECF No. 78 at 37. Specifically, Plaintiff has presented evidence to link the Dancey Incident to a sexually harassing environment. According to Plaintiff, she advised Robert Harrelson that she wanted Dancey to be fired after the assault, and Plaintiff continued to raise her concerns for several days after the incident. *See* ECF No. 72-9 at 85. Agreeing with the Magistrate Judge's analysis, the court concludes that a reasonable juror could infer that it was because of Plaintiff's continued requests that Dancey be fired that Robert Harrelson initially proposed the idea of demoting Plaintiff and noting to her that she needed to change her attitude. *Id.*

Furthermore, on October 23, Louis F. Harrelson asked Plaintiff how much longer she would be "mad at him," and that same day, according to Plaintiff, Louis F. Harrelson terminated her. ECF No. 72-1 at 14. According to the Magistrate Judge, it might reasonably be inferred that Louis F. Harrelson considered Plaintiff to be "mad at him" for failing to adequately discipline Dancey, and that it was that tension that culminated in Louis F. Harrelson terminating Plaintiff later that same day. ECF No. 78 at 38. Lastly, Harrelson Nissan has not set forth any reason, in the alternative, for Plaintiff's termination. ECF No. 79 at 12. Thus, the court concludes that the Magistrate Judge did not err in finding that there is sufficient evidence to create a dispute of material fact regarding the issue of whether Plaintiff was terminated.

The court finds that Plaintiff has established a prima facie case for a wrongful termination claim under anti-discrimination law. Harrelson Nissan's motion for summary judgment on Plaintiff's wrongful termination claim is denied.

        d.      <u>Title VII claim for punitive damages</u>

The availability of punitive damages in a Title VII case is governed by statute. Section 1981a(b)(1) of Title 42 provides:

> A complaining party may recover punitive damages under [Title VII] against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1). In *Kolstad v. American Dental Ass'n,* 527 U.S. 526, (1999), the Supreme Court concluded a defendant is appropriately subject to punitive damages if it acts "in the face of a perceived risk that its actions will violate federal law." *Id.* at 536. Furthermore, the Court has cautioned that:

> There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard. In some instances, the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability.

*Id.* at 537. In considering the issue, the court is to construe all evidence and inferences in favor of the plaintiff to determine whether a "reasonable juror could only conclude that [defendant] engaged in good-faith efforts to comply with [the applicable Civil Rights statute]." *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 445 (4th Cir. 2000) (considering a Rule 50(b) motion after jury verdict) (citing *Kolstad*, 527 U.S. at 545). Additionally, an employer's challenge to Title VII

punitive damages may be considered at the summary judgment stage. e.g., *Saah v. Thumel*, No. CV RDB-15-2425, 2017 WL 491221, at *13 (D. Md. Feb. 7, 2017) (granting the defendant's motion for summary judgment as to the plaintiff's prayer for punitive damages in Title VII discrimination and retaliation matter).

In her Report, the Magistrate Judge acknowledges that the court would be better equipped to make a punitive damages determination either just before or during trial. ECF No. 78 at 40; *See Smith v. Tower Auto. Operations USA I, LLC*, No. 4:12-CV-93-CWR-FKB, 2013 WL 6240247, at *9 (S.D. Miss. Dec. 3, 2013) ("The Court finds that a ruling on the punitive damages claim is premature at this juncture, as the Court is not armed with enough knowledge to determine whether Plaintiffs meet this standard. Thus, the Court will defer its ruling until after the presentation of proof at trial."). However, the Magistrate Judge also notes that Plaintiff did not respond to this portion of Defendants' Motion for Summary Judgment, which suggests she has abandoned her pursuit of punitive damages as to her Title VII claims. *Id.* at 39; *See Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 560–61 (D.S.C. 2009) (holding that the failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action). Despite Plaintiff's silence on the matter, the Magistrate Judge recommends that, should the court deny Harrelson Nissan's motion for summary judgment on Plaintiff's Title VII claims, the court should defer its decision on punitive damages until more evidence is gathered. ECF No. 78 at 40.

The court concludes that the Magistrate Judge did not err in finding that the court should postpone its ruling on punitive damages. Because the court has determined that Harrelson Nissan's motion of summary judgment as to Plaintiff's Title VII claims for harassment, retaliation, and

wrongful termination should be denied, given the egregious nature of Plaintiff's allegations the court finds that a determination on punitive damages at this point would be premature.

**B.      Plaintiff's State Law Claim for Slander**

Plaintiff also asserts a state law claim for slander against Defendant Robert Harrelson, claiming he falsely stated that Plaintiff embezzled money from Harrelson Nissan. Defendants seeks summary judgment as to damages. Plaintiff asserts that she has made a showing of defamation *per se.* The Magistrate Judge recommends that summary judgment be denied as to Plaintiff's slander claim.

In South Carolina, the elements for a defamation claim are: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 748 (S.C. Ct. App. 2001). When considering the "damages" portion of these elements, a statement may be actionable per se when it is both false and defamatory and suggests 1) the commission of a crime of moral turpitude, 2) contraction of a loathsome disease, 3) adultery, 4) unchastity, or 5) unfitness in one's business or profession. *Holtzscheither v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 508–09 (S.C. 1998).

Defendants contend that the Magistrate Judge erred in finding that Plaintiff demonstrated harm arising from Robert Harrelson's alleged statement. ECF No. 79 at 13. However, the Magistrate Judge noted evidence to the contrary in her Report. Specifically, Plaintiff presented documentation from Mr. Richard Ross who testified that "Robert Harrelson and Lloyd Edwards informed me that the reason [Plaintiff] was no longer employed with the Harrelsons was that she had stolen from them." ECF No. 72-18. According to the Magistrate Judge, to untruthfully

state an employee embezzled money, especially when the employee works in the accounting field, without doubt would signal that person's unfitness in his or her profession. Accordingly, the statement becomes actionable "irrespective of special harm." *Murray*, 542 S.E.2d at 748. The court agrees. The Defendants' motion for summary judgment on Plaintiff's claim for damages is denied.

## C.     Recommendations Without Objections

Neither party filed objections to the Magistrate Judge's recommendations that: (1) Defendant Louis F. Harrelson be dismissed as a party; and (2) that summary judgment be granted as to all Defendants with regard to Plaintiff's tortious interference with contract claim. Nevertheless, the court has conducted a *de novo* review of the issues and concludes that the Magistrate Judge has properly applied the applicable law. Finding no clear error, the court adopts the Magistrate Judge's findings. *Diamond*, 416 F.3d at 315 (4th Cir. 2005).

## IV.     CONCLUSION

The court adopts the Report and Recommendation of the Magistrate Judge and incorporates it herein by reference to the extent the Magistrate Judge's findings and recommendations are consistent with the court's analysis. Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** Defendants' Motion for Summary Judgment dismissing Defendant Louis F. Harrelson is **GRANTED.** Defendants' Motion for Summary Judgment dismissing Plaintiff's tortious interference with contract claim is **GRANTED** as to all Defendants. As to Plaintiff's Title VII claims for harassment, retaliation, and wrongful termination, Defendants' Motion for Summary Judgment is **DENIED**. Defendants' Motion for Summary Judgment as to Plaintiff's slander claim is **DENIED.**

The court will schedule a trial for the remaining claims.  Motions in limine must be filed no later than December 21, 2017.  No later than December 8, 2017, the parties shall file and exchange Fed.R.Civ.P. 26(a)(3) pretrial disclosures.  Within fourteen (days) thereafter, a party shall file and exchange Fed.R.Civ.P. 26(a)(3) objections, any objections to use of deposition designated by another party and any deposition counter-designations under Fed.R.Civ.P. 32(a)(4).  Pursuant to Local Civil Rule 26.07, parties shall furnish pretrial briefs seven (7) days before jury selection, or January 2, 2018.  Jury selection is scheduled for January 9, 2018.

**IT IS SO ORDERED.**

 s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
September 29, 2017